**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**JOHN RHONE**                                                                    **PETITIONER**

**VERSUS**                                                           **NO.  4:07CV111 TSL-LRA**

**CHRISTOPHER EPPS and**
**JIM HOOD**                                                                   **RESPONDENTS**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Petition for Writ of Habeas Corpus of
John Rhone [hereinafter Petitioner] pursuant to 28 U.S.C. §2254, and the
Response to the Petition for Writ of Habeas Corpus filed by Christopher Epps and
Jim Hood [hereinafter Respondents].  Having carefully considered the pleadings,
the record submitted, the briefs and argument of the parties, and the relevant
legal authority, the Undersigned United States Magistrate Judge is of the opinion
that Petitioner's request for relief pursuant to 28 U.S.C. §2254 should be denied.

**FACTUAL BACKGROUND**

On October 3, 2001, Petitioner pled guilty to possession of marijuana with
the intent to distribute in the Circuit Court of Lauderdale County, Mississippi.  At
the time of his guilty plea, he also admitted to prior felony convictions of kidnaping
and the sale of cocaine, and was treated as a habitual offender under Mississippi
Code Annotated section 99-19-83 (Rev. 2000).  The district attorney
recommended, pursuant to a plea bargain agreement, one and one-half years in
the custody of the Department of Corrections, along with a $5,000 fine, of which
$4000 would be suspended, and various other fees, totaling $500. (See Order

Accepting Plea and Setting Sentencing, ECF No. 11-10, p.101 and Transcript of Guilty Plea Hearing, ECF No. 11-9, p.9). The trial court accepted Petitioner's guilty plea, and scheduled the sentencing hearing for January 18, 2002, at 1:30 P.M. The court instructed Petitioner, and it was clearly written in the order, that the guilty plea was accepted with the proviso that if Petitioner appeared for sentencing he would  be given the agreed sentence of one and one-half years, but if he did not appear or was late, then the guilty plea would become a blind plea, meaning there would be no plea agreement and the defendant would be subject to sentencing within the discretion of the court and may be sentenced to any lawful sentence under the law from "zero to sixty years." (ECF No. 11-10 p.101 & ECF No. 11-9, p. 10).  Petitioner affirmatively stated that he understood that if he  failed to attend the sentencing hearing, the plea would be considered "in the blind." ( ECF No. 11-9, pp.  9,10, 16)

The trial court also warned Petitioner that because he had  been convicted of more than two felonies from separate incidents, that if he was convicted of another felony in the future, he would face a maximum term of imprisonment for that felony, without the possibility of reduction or parole. (ECF No. 11-9, pp.  9,10, 16) The court explained further that because one of his prior felonies was a crime of violence, if he was convicted of another felony in the future he would be sentenced to life in prison without the possibility of suspension or parole. (ECF No. 11-9, pp.  12-13)

On January 18, 2002, Petitioner appeared at the appointed time for his

sentencing hearing.  While waiting at the courthouse, however, Petitioner received written notice  from his lawyer, advising that his sentencing hearing had been rescheduled to February 12, 2002,  and that he should return on that date for sentencing.  **Rhone v. State**, 957 So.  2d 1018, 1020 (Miss.  App.2006) The sentencing judge was in a jury trial in Wayne  County, Mississippi.   On February 12, 2002, Petitioner was present on the first floor of the courthouse, but chose not to go to the courtroom chambers for the rescheduled sentencing hearing because he was concerned about additional charges which had arisen since his plea hearing in October.   While out on bond from the charges in the case *sub judice*, Rhone allegedly shot a person with a shotgun. *See* **Rhone v. State** at 1021, n.1).  Petitioner was allegedly pressuring the person he allegedly shot to retract the charges and, according to the district attorney, the shooting victim had gone to Petitioner's lawyer, at Rhone's urging and for a promise of $300, to tell the lawyer Rhone was not the person who shot him and to drop the charges. The shooting victim later recanted, however,  and advised the district attorney that he wanted to press charges against Petitioner.   (ECF No. 11-9, pp.  12-13)

When Petitioner failed to appear for sentencing, the trial court issued a bench warrant and Petitioner was taken into custody on March 27, 2002.  (ECF No. 11-11, p.  9) On  April 22, 2002,[1] Petitioner was sentenced, pursuant to the now blind plea, to serve a term of thirty (30) years in the custody of the Mississippi

---

[1] The trial court's "Sentencing Order" is dated April 22, 2002.  Although the transcript of Petitioner's sentencing hearing bears the date of April 22, 2003, S.C.R. Vol.2, p.154, this appears to be typographical error as both the sentencing order and the judge's comments reflect that the hearing actually occurred in 2002.

Department of Corrections. (See Sentencing Order, ECF No. 11-10, p. 10 3)

## PROCEDURAL HISTORY

On April 22, 2002, Petitioner was sentenced to serve a term of thirty (30) years in the Mississippi Department of Corrections.  Aggrieved of this decision, Petitioner filed a "Motion for Post-Conviction Collateral Relief" in the Circuit Court of Lauderdale County, Mississippi, which was denied by that court on June 29, 2005.[2]  Thereafter, petitioner appealed the denial of motion for post-conviction

---

[2]     In Support of his Motion for Post Conviction Relief, Petitioner asserted the following grounds: (as stated by Petitioner)

    1.     The Petitioner was denied effective assistance of counsel by counsel's acts specified by the following cumulative acts identfied through the letters A-Q. Counsel's actions listed alphabetized are specified acts which subjected Petitioner to be denied effective assistance of counsel:

        A.     By counsel's failure to object to the fact of State change of a specified conditioned date and time of a plea bargain agreement without Petitioner consent to altering term, and affording Petitioner an opportunity to withdraw, replead, and renegotiate terms to make legally binding to parties as required.

        B.     By counsel's failure to disclose to sentencing court of the expressly ordered condition of enforcement of date and time in plea agreement essential in contract whereby detrimental reliance of enforcement was predicated.

        C.     Counsel's failure to object to fact that plea was not what was bargained for and accepted by Court in way of promise of performance at sentencing.

        D.     Counsel's non-discussion with Petitioner of P.S.R. prior to sentencing as required.

        E.     Counsel's conflict of interest concerning fees in which at sentencing hearing he asserted non-relevant to existing factors surrounding plea agreement and its enforcement to sentence.

        F.     Counsel's failure to raise of detrimentatility required hearing to gain new plea contract after state did not honor terms as they were construed in original plea agreement.

G.     Counsel's failure to inform at sentencing hearing that Rhone never violated condition of his plea agreement or any agreement or term approved by court to not receive his agreed upon sentence.

H.     Counsel's failure to object to fact that Petitioner was not proven to have violated plea agreement by objective standards necessary to prove he breached.

I.     Counsel's failure to object to enhancement when court had no justification or reasoning to enhance by terms definitely made in plea hearing when plea and bargain accepted.

J.     Counsel's failure to argue that sentence was cemented at 1 ½ year sentence since State obstructed expressly definite plea stipulation and Petitioner complied.

K.     Counsel's failure to make Court aware that no consent to change of plea and its terms as secured by agreement which was accepted and ordered by Court were provided to bind a new provision as required was given.

L.     Counsel's allowed representation at sentencing when P.S.R. clearly stated conflict of interest because of legal fees representing infidelity in relationship by fact client could not have breached and State altered definite term essential.

M.     Counsel's failure to argue or file a motion for enforcement of 1 ½ year sentence due to detrimental reliance on promise and affirmative acts of substantial assistance when State seen before sentence it could not honor plea as construed.

N.     Counsel's failure to request plea hearing to obtain voluntarily knowingly, and intelligently consent to bind petitioner to new contract and terms after it had duty as court to give affect to what was in the contract.

O.     Counsel's failure to object to the clearly erroneous ruling of different judge presiding, and different prosecutor than those originally who were aware that plea was conditioned on a specified definite time for performing pursuant to agreement.

P.     Counsel was ineffective for not informing me that original specific contract was altered and terms applied to a date and time in contravention with definite conditioned relied upon date.

Q.     Counsel's failure to inform client of what form of proceeding was he to return to after original plea could not be enforced as made due to time frame passed and neglected by State's conduct of not performing as plea agreement was required.

2.    Petitioner was the victim of prosecutorial misconduct by the prosecutor being a different prosecutor that disclosed and presented State's recommendation of 1 ½ year sentence agreed not performing his duty of recommending sentence agreed and promised at sentencing hearing.

3.    Petitioner was victim of prosecutorial misconduct when it obstructed a definite plea enforcement which was essential in plea agreement by altering contingent date.

4.    Petitioner was victim of prosecutorial misconduct by the act of promise by prosecutor not being performed on date promised specifically in plea agreement.

5.    Petitioner was victim of prosecutorial misconduct by the act of his neglecting his duty to obtain a just reason to revoke promised sentence and enhance it for non-breach of agreement by prosecutor as officer of the court.

6.    The Petitioner was denied his right to due process of law where afer Court prevented enforcement as specifically agreed upon as contingency it did not move to obtain a new plea agreement.

7.    The petitioner was denied due process when it changed date that was detrimentally relied on as a promise to perform specifically on date bargain stipulated, which induced petitioner to plead guilty.

8.    The petitioner was denied due process when court vacated and modified sua sponte a legal valid plea because of events that did not impugn the validity of original agreement when petitioner endangered himself and family with substantial assistance but did not obtain that which was promised.

9.    The petitioner was denied due process of law when he was not given notice of right to withdraw or opportunity to withdraw once court could not enforce bargain as agreed to perform specifically as required.

10.   Petitioner guilty plea was involuntary invoking due process of law violation where Rule 11(e) of Federal Rule of Criminal Procedure was met.

11.   Petitioner guilty plea was involuntary when MS.R.Unif. C † C.C. 8.4 3 and 4 MS Rule of Circuit and County Court Rule 8.04 was not adhered.

12.   Fair and just proceeding was denied when State violated public policy and imparted obligation of contract by bringing plea agreement before Court and presenting it totally opposite to the original provision that was presented to the court under oath.

13.   Petitioner's plea agreement was breached by State specific act of altering and applying a term contrary to what was specified and promised by way of performance in plea agreement.

14. Petitioner's plea agreement was breached when the State through the judge and prosecutor unbound itself to its commitment to plea agreement's specific term of enforcement condition time pursuant to the plea agreement.

15. Petitioner plea agreement was breached when the State through the judge and prosecutor unbound itself to its commitment to plea agreement's specific term of enforcement condition time pursuant to the agreement.

16. Petitioner plea agreement was breached when court imposed sentence to one agreed.

17. Petitioner plea agreement was breached where at sentence hearing prosecutor failed to inform court that Petitioner complied with condition that he was ordered by the court.

18. State fortified its authority of Petitioner's plea agreement to enhance by not complying to meticulous standard of enforcement of both in promise and performance when it failed to sentence to precise terms agreed.

19. State fortified its authority over Petitioner's plea agreement to sentence, where it entered in to a plea agreement which court accepted with stipulations of sentencing safeguarded by contingent date and neglected date and its significance to plea agreement by way of promise and performance.

20. Plea of guilty was involuntary by plea bargain and plea of guilty induced by fraud of a promise not kept.

21. Plea of guilty was involuntary by court not informing petitioner of a direct consequence of plea agreement that would defiantly, automatically, directly affect his sentence and punishment.

22. Plea of guilty was involuntary, where State obstructed enforcement of a plea agreement that was unambiguously to be enforced on a stipulated date and time without giving petitioner opportunity to withdraw before sentencing.

23. Sentence was illegal where Court never gave approval of its formation in plea agreement Petitioner and State provided stipulation within, to prevent occurrence such as transpired.

24. Sentence Petitioner was given was illegal, where it did not possess authority to sentence by way of original contract and its terms specified.

25. Sentence given Petitioner was illegal, where time limit governing sentence authority over sentence condition approved by court expired and State altered.

26. Judge abused his discretion in not enforcing 1 ½ year sentence that Petitioner had detrimentally relied upon in the agreement when he complied with

appearing on the date punctually and had provided assistance.

27.     Judge abused his discretion by not recognizing the provision of law designed to assure that an appropriate sentence is imposed.

28.     Judge abused his discretion by ignoring the specific order made binding when the Court accepted guilty plea and stipulated by time, date, and sentences contingent to this specified date.

29.     Judge abused his discretion when he did not construe contract of plea agreement at sentencing hearing as it was made by the parities.

30.     Judicial determination that Petitioner did breach a plea approved by Court was not possible when State obstructed original plea therefore judge arbitrarily denied contract right to original agreed sentence and abusing his discretion.

31.     Sentencing court erred by making a contract term apply to date which was not included in plea agreement which was pursuant to bargain to accepted and ordered.

32.     Sentencing Court erred when it did not sentence Petitioner in accordance with plea agreement.

33.     Sentencing Court erred when it enhanced sentence without justified reason by law or fairness.

34.     Sentencing Court erred where it was made aware that specified contingent term of plea obstructed for performance by State changing a definite term of plea agreement essential in executing on date assigned yet sentence enhanced.

35.     Sentencing Court abused its discretion when it avoided safeguard of proving breach by objective standards in plea and ignoring same standards it sentenced petitioner.

36.     Sentencing Court abused discretion and erred when it did not inform Defendant of right to withdraw a previously approved plea when Court officer dishonored the terms of definite unambiguous plea agreement.

37.     Sentencing Court erred when it was aware of fact of definite plea agreement term detrimentally relied on in both ways of promise and performance and did not give affect to them in Petitioner's agreement at sentencing.

38.     Sentence Court erred where judge was different, prosecutor was different, defense counsel was inadequate, and specified definite plea contingent was ignored on date it was to be enforced and Petitioner and received a sentence contrary to agreed plea bargain at sentencing.

collateral relied to the Mississippi Court of Appeals, citing as error substantially the same grounds raised in his PCR.  On November 21, 2006, the Mississippi Court of Appeals affirmed Petitioner's conviction and sentence.  **Rhone v. State**, 957 So. 2d 1018 (Miss.  App.  2006), *reh'g denied* April 3, 2007,  *cert.  denied* June 7, 2007.

## STANDARD OF REVIEW

This case is controlled by the applicable portions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-32, 110 Stat. 12144. The AEDPA and case law interpreting it provide the standards under which the Petition must be evaluated.  **See Neal v.  Puckett**, 286 F.  3d 230, 235 (5th Cir. 2002), *cert.  denied*, 537 U.S. 1104 (2003).   As an initial matter, under AEDPA, exhaustion of state remedies is a mandatory prerequisite to federal habeas relief

---

39.    Sentencing Court breached plea agreement and used the Court to violate Petitioner for a condition not part of plea agreement State and Petitioner agreed to as term stipulated in promise of performing enforcement.

40.    State committed plain error by these combined factors:

       A.    State breached plea not enforcing as stipulated, accuse Petitioner of breach he did not have opportunity to breach, enhance Petitioner's sentence without justification, and Sentencing Court failure to view this obviously by not noticing and correcting manifest injustice of negligent acts at sentencing which affected fairness of the proceedings in a plea agreement which had but one obligation and interpretation.

41.    State violated the rule set forth in **Santobello v. New York**, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

(ECF No. 11-10, p.  7)

under 28 U.S.C. §2254, which provides as follows:

(a)     The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)     (1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i)     there is an absence of available State corrective process; or

(ii)     circumstances exist that render such process ineffective to protect the rights of the applicant.
.     .     .

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To satisfy the exhaustion requirement, a petitioner must first present his claims to the highest state court so that it is given a fair opportunity to consider and pass upon challenges to a conviction, before those issues come to federal court for habeas corpus review. **O'Sullivan v Boerckel**, 526 U.S. 838, 844-45 (1999). In addition to determining whether the Petitioner has exhausted state court remedies, federal courts must also determine whether the state court has decided the claim on the merits. Where the state court has adjudicated the merits, habeas relief is barred except under very limited circumstances under

AEDPA:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1)  resulted in a decision that was **contrary to, or involved an unreasonable application of, clearly established Federal law**, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an **unreasonable determination of the facts in light of the evidence** presented in the State court proceeding.

(Emphasis added) 28 U.S.C. § 2254(d).

An "unreasonable application" by a state court decision is where the court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." **Bell v. Cone**, 535 U.S. 685, 694 (2002). Merely an erroneous or incorrect application of federal law is not to be considered unreasonable; the state-court's application must be objectively unreasonable before relief may be granted. **Rompilla v. Beard**, 545 U.S. 374, 380 (2005). *See also* **St. Aubin v. Quarterman**, 470 F.3d 1096, 1099 (5th Cir. 2006).

Factual findings are presumed to be correct, and the Court defers to the state court's decision regarding factual determinations unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." **Hill v. Johnson**, 210 F.3d 481, 485 (5th Cir. 2000). Federal courts have no authority to grant habeas corpus relief simply because "we

11

conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." **Catalan v. Cockrell**, 315 F.3d 491, 493 (5th Cir. 2002). Indeed, a federal court does not "sit as a 'super' state supreme court" and should decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." **Smith v. McCotter**, 786 F. 2d 697, 700 (5th Cir. 1986); *see also* **Mendiola v. Estelle**, 635 F.2d 487, 491 (5th Cir. 1981). A determination of a factual issue made by a state court is entitled to a presumption of correctness which the petitioner has the burden of rebutting by clear and convincing evidence. 28 U.S. C. §2254 (e)(1). *See also* **Schriro v. Landrigan**, 127 S. Ct. 1933, 1939-40 (2007). The state court's decision shall be considered contrary to federal law if it directly conflicts with prior Supreme Court holdings, or it reaches a different conclusion than that reached by the Supreme Court on materially indistinguishable facts. **Henderson v. Quarterman**, 460 F.3d 654, 659 (5th Cir. 2006). Questions of fact are reviewed under § 2254(d)(2), while questions of law, or mixed questions of law and fact, are reviewed under §2254(d)(1).

## GROUNDS FOR FEDERAL HABEAS RELIEF

In the subject case, Petitioner enumerates the following grounds for which he claims habeas corpus relief is warranted (as stated by Petitioner):

1. Was the decision of the Court that decided my case in conflict with the decision of other appellate courts?

2. Was the Appeals Court determination that enforcability as safeguarded proviso provided; was

12

indeed an unavoidable conflict relating to the trial Court for the justified enhancement of Rhone's sentence for breach of plea agreement?

3.     Was the federal applied case of **David v. United State of America**, 58 F. 3d 113, 1995 U.S. Lexis 16023 inapplicable to the instant case for State's cited authority justification and in conflict with other federal cases and relative state appellate court cases?

4.     Was the legislature and judicial interpretation under the United State Constitution and Mississippi Constitution regarding contract law protecting interests of its citizens indeed activated in this instant case at the embodiment of the Court's acceptance on October 3rd, 2001 guilty plea and setting sentence hearing?

5.     Was deceit or fraud implicated in the face of irrefutable evidence of avoidable conflict of the specified expressed proviso to grant Petitioner's sentence enforcement that resulted in an unjust enhancement?

6.     Was it error for Court to proceed with appearance proviso factor governing after it did not honor it as agreed, but subsequently held petitioner to term of a later date outside the perimeter of plea agreement without affording Petitioner an opportunity to withdraw?

7.     Was it error for sentencing Court to construe plea agreement as it decided, and neglect the unambiguous expressed proviso safeguarding the instrument?

8.     Was the State, Court or prosecutor bound to the plea bargain agreement relied and understood by all parties as agreed and accepted by trial Court according to state and federal law in the face of State's inadvertent mistake?

9.     Was it clear and plain error in the face of the

preponderance of evidence, legal authorities, and factual assertions that a transparent manifest injustice occurred when the sentence Court sua sponte decided that it could not enforce plea bargain as agreed, or a valid and binding agreement?

10. Was the plea and agreement a voluntary act after State induced with low sentence range upon safeguarded appearance proviso contingency, but did not perform, and altered a direct consequential factor after guilty plea and terms, and conditions accepted by trial Court?

11. Was it error that all of the grounds and issues raised and argued at all forums of this appeal from the post-conviction motion through to the highest Court of Mississippi that were denied relief, permitted to stand, against the public policy, the federal parallel issues indicated and fairness, in light of the pertinent and relevant evident facts as indicated in the proofs that were denied disclosure at the stage of attempting to complete the record before the U.P.C.C.R. motion and the Reply Brief exhibits indicated and substantiated?

12. Was it error for the stat courts to pass on the timely raised questions federally, parallel to state's as expressed in the U.P.C.C.R. motion stage of proceedings, and throughout this appeals plight?

13. There does not exist any case law in Mississippi's history of legal precedents than an expressly specified proviso governing an appearance contingency case as the instant case, whereby compliance of appearance was met, the Court altered an accepted and ordered plea and agreement which was conditionally safeguarded by an expressly specified proviso in place, subsequently adjudicated Petitioner to have breached terms and condition not within plea agreement without reasonable justification, legal or factual, in the face of enforceability, nor the Federal cited case authority State used to defend

14

enhancement was relevant only relatively to the instant case and thus is clear and plain error for the reviewing appellate courts to recognize.

14.    Was it plain error for the pertinent and relevant evidence provided by the Reply Brief at Exhibits X1-X2 which arose and was explained before the appeal states, on and up through the highest state Court, and the unproduced requested exhibits as seen at the correction and review of record procedure on a concise and reason giving motion not granted, for to disclose irrefutable proof, that stipulated plea agreement enforcement was enforceable not produced, proving U.S. constitutional and Mississippi's constitutional violation rights?

15.    Was it error for the trial court to enhance Petitioner's sentence, appeal Court and highest Court of Mississippi to affirm on the belief that the objective standards were met to justify that Petitioner breached his plea bargain agreement condition precedent and thus subject to enhanced sentence?

16.    Did the alternating judge add a new term of plea bargain agreement under the scope that proper notice of a subsequent date and time in conjunction of compliance provision of original agreement was in effect?

17.    The Appeals Court of Mississippi decided on a federal standpoint in permitting the application of the federal case analysis and opinion authority of **David v. U.S.**, 58 F.3d 113; 1995 U.S. App. Lexis 16023, against the constitutional conflicting precedent of **Santobello v. New York**, 404 U.S. 257; in regard to the issues safeguarding the vested rights present within the instant case and supported by the preponderance of evidence, thus in error of a just legal basis.

18.    Was it error to permit the same presiding judge to with sentenced Petitioner to enhanced sentence he

appealed from, to rule on Uniform Post Conviction Collateral Relief motion to deny the procurement and admission of documented evidence reasoned and requested by way of motion, to prove both U.S. Constitution and Mississippi Constitution claims, and also to allow exclusion requested in the review of record and correction process toward completing the record, that was to be reviewed on appeal in the appellate court's jurisdiction?

19. Was it error for the trial, appeal and supreme courts of Mississippi upon Petitioner's exhaustion process of remedies, failure to recognize the specific expressed proviso appearance factor as an unambiguous safeguard in place, warranting Petitioner's relief under all the issues and grounds raised State and federal from his post-conviction motion, in face of irrefutable evidence that plea meticulously could and was designed to be enforced.

20. Was sentence to be obtained for appearance compliancy on the proviso specified date and time a mere expectation of a definite term of the plea bargain agreement?

21. Was Petitioner's legal counsel throughout these proceedings performing adequately and up to par as to what a reasonable lawyer would have done in the interests of his client?

22. Newly discovered of testimony by affidavit of felon obtaining his custody on January 18, 2002 stipulated performance date of Petitioner.

## ANALYSIS

### Procedurally Barred Claim

Respondents argue that Petitioner's claim as set forth in Ground Eighteen is procedurally barred from federal review under **Sones v. Hargett**, 61F.3d 410, 416 (5th Cir. 1995). Petitioner acknowledges this claim was not presented to the

Mississippi Supreme Court, as required by **Sones v.  Hargett**, but counters, that

he has good cause to overstep the procedural bar.  He claims he was prevented

from pursuing this claim because he was "on psychiatric medications because of

hallucinations and oratory complications, depression, mood swings, and bi-polar

diagnosis under mind altering and hindering drugs."   (See Petitioner's Traverse,

ECF No.  12, p.  3).  Respondents point out in rebuttal that despite Petitioner's

claim that his psychiatric condition prevented him from including this claim in his

state court post conviction, the condition did not prevent Petitioner from raising

forty-one (41) issues in his lengthy state court PCR, nor did it prevent him from

re-raising those same forty-one (41) issues to the Mississippi Supreme Court on

appeal, nor from filing the current petition, which asserts twenty-two grounds for

habeas relief.   (Respondents' Response to  Traverse, ECF No. 13, p.  2).

The Undersigned agrees and notes further that in **Murray v. Carrier**,  the

United Supreme Court defined cause sufficient to excuse procedural default as

"some objective factor external to the defense" which precludes petitioner's ability

to pursue his claim in state court.  **Harris v. McAdory**, 334 F.3d 665, 668 (7th

Cir. 2003) (*citing* **Murray v. Carrier**, 477 U.S. 478, 488 (1986)).  While the

Supreme Court has yet to decide whether a mental condition counts as an

"objective factor external to the defense" that will excuse procedural default, other

circuits have alluded to an answer to this question.  In **Harris v. McAdory**, the

petitioner argued that his *pro se* status, his borderline mental retardation, and his

frontal lobe brain dysfunction were cause for his failure to exhaust his claims in

state court.  **Harris**, 334 F.3d at 668.  The Seventh Circuit held that neither of these factors constituted sufficient cause to excuse his procedural default.  **Id**. at 668-69.  Specifically, in response to his claim regarding mental retardation, the Court concluded that the petitioner's mental condition was not external to his defense.  **Id**. at 669.  The Court stated that "something that comes from a source within the petitioner is unlikely to qualify as an external impediment."  **Id**.

The Seventh Circuit recently affirmed its position in **Morgan v. Chandler**. The Court stated that to show good cause for a procedural default, the petitioner "would have to identify a factor external to his defense that precluded him from raising the claim in his petition to the Supreme Court of Illinois.  Mental illness is not such a factor."  **Morgan v. Chandler**, No. 09-2618, 2010 WL 887384 at *3 (7th Cir. March 11, 2010).   In concluding that mental illness does not establish good cause, the Seventh Circuit also summarized the case law of other circuits. The Third Circuit, in **Hull v. Freeman**, found that petitioner's borderline mental retardation did not establish cause because it was not external to his defense in the meaning of **Murray v. Carrier.   Harris**, 334 F.3d at 669 (*citing* **Hull v. Freeman**, 991 F.2d 86, 91 (3d Cir. 1993)).   The Ninth Circuit, in **Tacho v. Martinez**, found that petitioner's diagnosis as a "borderline mental defective" was insufficient to establish cause.   **Id**. (*citing* **Tacho v. Martinez**, 862 F.2d 1376, 1381 (9th Cir. 1988)).   In **Holt v. Bowersox**, the Eighth Circuit indicated that mental illness may constitute good cause.  *See* **Holt v. Bowersox**, 191 F.3d 970, 974 (8th Cir. 1999) (holding that in order for mental illness to constitute cause

18

and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief).

The Fifth Circuit has also addressed the factors that constitute cause. In **United States v. Flores**, it noted that neither illiteracy, deafness, lack of training in the law, or *pro se* status amount to cause because none of these factors are external to a petitioner's defense. **United States v. Flores**, 981 F.2d 231, 236 (5th Cir. 1993). The Fifth Circuit did not explicitly state that a mental condition suffices to show good cause; however, since the Court focused on the fact that there was no external force preventing the **Flores** petitioner from raising his claims in state court, it is likely that it would find that a mental condition does not constitute good cause.

Having applied these legal principles to Petitioner's claim that his psychiatric condition prevented him from raising Ground Eighteen in state court, the Undersigned finds that Petitioner has failed to show good cause to excuse his procedural default. As such, Petitioner is not entitled to habeas review as to this claim.

As to the remaining claims, this Court must determine whether the Mississippi Supreme Court's decision was an unreasonable application of, or contrary to any clearly established federal law. The Court notes that Petitioner raises twenty-two claims for habeas relief, and though they are somewhat difficult

to discern, the claims are largely repetitive, in that they center around Petitioner's

failure to appear at the rescheduled sentencing hearing on February 12, 2002.

These claims, which raise issues of trial court error, prosecutorial misconduct,

ineffective assistance of counsel, and due process violations, are best categorized

and addressed as follows:

> I. Whether the State Court's ruling was contrary to or an unreasonable application of **Santobello v. New York**, 404 U.S. 257, 92 S. Ct.495 (1971) and **U.S. v. David**, 58 F. 3d 113 (4th Cir. 1995).
>
> II. Whether the Plea Agreement was Breached when Petitioner's Sentencing Hearing was Rescheduled.
>
> III. Whether Petitioner's Guilty Plea was Rendered Involuntary.
>
> IV. Whether the Mississippi Supreme Court's Decision Denying Petitioners's Ineffective Assistance of Counsel Claims was Contrary to, or an Unreasonable Application of **Strickland v. Washington**, 466 U.S. 668 (1984).
>
> V. Whether Newly Discovered Evidence Entitled Petitioner to Habeas Relief.

## I.

**Whether the State Court's ruling was contrary to or an unreasonable application of <u>Santobello v. New York</u>, 404 U.S. 257, 92 S. Ct.495 (1971) and <u>U.S. v. David</u>, 58 F. 3d 113 (4th Cir. 1995).**

In Grounds One, Three, Twelve, Fourteen, and Seventeen, Petitioner argues

he is entitled to habeas relief because the state court's finding that he breached

the condition of his plea agreement is contrary to, or an unreasonable application

of clearly established federal law. He argues specifically, in grounds Three and

Seventeen, that the state's court's decision is contrary to the United States Supreme Court's ruling in **Santobello v. New York**, 404 U.S. 257, 92 S.Ct. 495 (1971), and an unreasonable application of **U.S. v, David**, 58 F. 3d 113 (4th Cir. 1995).

It is well-settled law that a breached plea agreement is a valid basis for granting habeas relief. In **Santobello v. New York**, the United States Supreme Court explained that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. 257, 262 92 S. Ct. 495, 499, 30 L.Ed. 2d 427 (1971). In other words, "when the ***prosecution*** breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise . . . ." **Mabry v. Johnson**, 467 U.S. 504, 104 S.Ct. 2543 (1984) (emphasis added). In analyzing the **Santobello** holding, the state court of appeals noted Petitioner's failure "to acknowledge that the prosecution did not breach his plea agreement - he did." **Rhone**, 957 So. 2d at 1022. Accordingly, the court of appeals reasoned that **Santobello** was inapplicable, relying instead on the Fourth Circuit's decision in **U.S. v. David**, 58 F. 3d 113 (4th Cir. 1995). That Court held that a defendant's failure to appear for a sentencing hearing violated the plea agreement for a reduced sentence, for "implicit in every such plea agreement is the defendant's obligation to appear for sentencing at the time appointed by the district court." **Id**. at 115. Respondents also cite the Fifth Circuit's decision in **U.S. v. Ballis**, 28 F. 3d 1399, 1410-11(5th

Cir. 1994), which holds "if a defendant materially breaches his commitments under a plea agreement, the government is released from its obligations under that compact and may bring a new indictment on previously dismissed charges, regardless of what it may have promised earlier."

Applying these principles to the instant habeas petition, the Undersigned finds the state court's interpretation of these cases was neither contrary to, nor an unreasonable application of, clearly established federal law for the reasons explained above. The Court additionally finds that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence. Accordingly, Petitioner is not entitled to habeas relief on these claims.

## II.

### Whether the Plea Agreement was Breached when Petitioner's Sentencing Hearing was Rescheduled

Grounds Two, Four, Five, Six, Seven, Eight, Nine, Eleven, Thirteen, Fifteen, Sixteen, Nineteen, and Twenty all effectively contend that the plea agreement was breached when Petitioner's sentencing hearing was rescheduled to February 12, 2002. Specifically, Petitioner submits that his appearance for the hearing on January 18, 2002, "cemented" the terms of the plea agreement and the trial court breached the terms of the agreement when it sentenced him to more than one and one-half years, for not appearing at the rescheduled hearing on February 12, 2002. The record clearly delineates what terms would breach the plea agreement, and that the trial court thoroughly went over those terms with Petitioner during the entry of Petitioner's guilty plea:

22

Q:     All right.   Paragraph 7 [of Rhone's petition to plead
       guilty] reflects that a plea bargain has been reached in
       your case.   According to your plea bargain agreement,
       you would be sentenced to one and a half years to serve
       with Mississippi Department of Corrections.   You will be
       fined $5000, with $4,000 being suspended, and you
       would be order [*sic*] to pay a $100 crime lab fee, a $400
       appearance bond fee and court costs [*sic*] in the amount
       of $246.50.   First, is that the plea bargain agreement
       that you have reached with the State in your case?

A:     Yes, sir.

              BY THE COURT:    Mr.  Jones?

              BY MR.  JONES:   Yes, sir, it is.

              BY THE COURT:    And Mr.  Davis?

              BY MR.  DAVIS:   That is correct, Your Honor.

              BY THE COURT:    All right.

Q:     According, also, to your plea bargain agreement, the
       Court would accept your guilty plea, I would adjudicate
       you to be guilty; however, I will set a sentencing hearing
       for you for January 18, 2002, at 1:30 p.m.   Your
       bondsman has agreed to allow you to remain out on the
       same bond.   **If you appear at that sentencing
       hearing at 1:30, then the Court will accept your
       plea bargain agreement that you reached with the
       State that I just went over with you.  However, on
       the flip-side, if you are either late for that hearing
       or you fail to appear at that sentencing hearing, the
       Court will treat this as a plea in the blind, which
       means there is no plea bargain agreement.**   And
       whenever you are picked up, the Court could then
       sentence you to serve anywhere from 0 to 60 years with
       the Mississippi Department of Corrections and/or fine you
       not less than $5,000, no more than $2,000,000.  **Now,
       is that your understanding of your plea bargain
       agreement and the way that your sentencing
       hearing works?**

A:        **Yes, sir.**

(Transcript of Guilty Plea Hearing, ECF No.  11-9, pp.  9-10) (emphasis added).

Following this exchange, both the trial court and counsel went on to reiterate that

Petitioner must understand that in order for his plea bargain to be honored, he

must appear at his sentencing hearing.

> BY THE COURT:        All right.  Mr.  Jones, you have witnessed your client's signature that he placed on his petition under oath.  You have also signed a Certificate of Counsel, stating that you have gone over this petition with him paragraph by paragraph, you have explained it to him, you answered his questions.  **You have also explained to him how this plea in the blind works, if he doesn't show up at his sentencing hearing.  Do you feel like your client fully understands what he is doing this morning?**

> BY MR.  JONES:        **I do, Your Honor.  I want him to again say that he understands that you have got to be here January 18th at 1:30.  And if you are not, you are looking at life imprisonment.**

> BY DEFENDANT RHONE:        **Yes, sir.**

> BY THE COURT:        Basically.

> COUNSEL:        Yes, sir.

> COURT:        You understand that?

> PETITIONER:        **Yes, sir.**

(ECF No.  11-9, pp.  13-14) (emphasis added).

    Although  the  above  exchanges  demonstrate  that  Petitioner  clearly

understood  what terms would breach the plea agreement during the entry of his

guilty plea, Petitioner insists that the plea agreement was breached because the sentencing hearing was rescheduled. The state court of appeals rejected this argument on direct appeal, finding instead that whether the sentencing hearing was held on January 18, 2002, or February 12, 2002, was inconsequential because Petitioner had notice of both dates and times. Finding that **<u>Santobello</u>** was factually distinguishable, and therefore inapplicable, the appellate court relied on **<u>U.S. v. David</u>**, where the defendant's failure to appear for a sentencing hearing violated the plea agreement for a reduced sentence. *See* **<u>Rhone</u>** at 1022. The appellate court explained further that Petitioner's failure to appear at his rescheduled hearing could not be blamed on his lawyer, the State, or the trial court:

> From the record, it is obvious the plea bargain agreement was fully explained to Rhone. He acknowledged he understood the terms. Rhone also admitted in his post-conviction relief motion that his lawyer provided him with the rescheduled hearing date and time. Rhone stated that he chose not to appear in the courtroom on February 12, 2002, but remained on the first floor of the courthouse.
>
> . . . .
>
> Further, in **<u>David</u>**, there was no ***specific*** instruction to the defendant to appear at the sentencing hearing, as there was in Rhone's case; the defendant's presence was presumed. Rhone repeatedly acknowledged that he understood the importance of his appearance at his sentencing hearing.
>
> . . . .
>
> Further, the fact that the sentencing hearing was rescheduled due to a conflict on the circuit judge's docket

> does not shift the blame of breaching the plea agreement
> to the prosecution.

**Rhone v. State**, at 1022 -23.   (emphasis in original).   The state court noted

further that Petitioner could not "use his own conduct as a basis for prosecutorial

misconduct." **Id**. To the contrary, "Rhone did not attend the sentencing hearing,

thereby breaching his part of the bargain, and thus the  plea agreement ceased

to exist." **Id**.

The Undersigned finds the state court' analysis comports with controlling

federal law in that, as discussed above, the rejection of this claim by the appellate

court was not contrary to, or an unreasonable application of **Santobello v.  New**

**York**, 404 U.S. 257, 92 S. Ct.495 (1971) or **U.S. v.  David**, 58 F.  3d 113 (4th

Cir.  1995), nor was it based on an unreasonable determination of the facts in light

of the evidence.  Accordingly, no habeas relief is warranted on this claim.

## III.

### Whether the Petitioner's Guilty Plea was Rendered Involuntary

In Ground Ten, Petitioner agues his guilty plea became involuntary when the

State failed to honor the plea agreement by fulfilling its bargain of sentencing

Rhone on January 18, 2002.  A federal habeas court will uphold a guilty plea only

if it was made knowingly, voluntarily, and intelligently, but "when the defendant,

rather than the prosecutor, breaches the agreement, the voluntariness of the plea

is not at issue because it was not the defendant who acted in reliance on a false

or unkept promise." **Hentz v. Hargett**, 71 F. 3d 1169, 1176 (5th Cir. 1996); *see*

*also* **Hobbs v. Blackburn**, 752 F. 2d 1079, 1081 (5th Cir.) *cert. denied*, 474 U.S.

838, 106 S.Ct. 117, 88 L. Ed. 2d 95 (1985).

Moreover, in evaluating this claim, the Mississippi Court of Appeals explained that the voluntariness of the guilty plea, as well as Petitioner's other claims, were all resolved by the fact that Petitioner's plea agreement was conditional on **his** appearance at the sentencing hearing;

> [T]hese issues may be resolved by the fact Rhone's plea bargain was conditional – he would only receive the one and one-half years in prison if he appeared for his sentencing hearing. Rhone did not attend his sentencing hearing, thereby breaching his part of the bargain, and thus the plea agreement ceased to exist.

**Rhone v. State**, at 1022.  Because the appellate's court's analysis  comports with the controlling federal law cited above, the Undersigned finds the appellate court's determination of this issue  was not contrary to or an unreasonable application of controlling federal law, nor was it based on an unreasonable determination of the facts in light of the evidence. Petitioner is therefore not entitled to habeas relief as to this claim.

## IV.

### Whether the Mississippi Supreme Court's Decision was Contrary to, or an Unreasonable Application of <u>Strickland v.  Washington</u>, 466 U.S. 668 (1984).

In Ground Twenty-One, Petitioner raises seventeen claims of ineffective assistance of counsel, all of which were presented in Petitioner's state court motion for post conviction collateral relief and on direct appeal, in grounds 1 (a)-(q).  The majority of these claims contend that counsel was ineffective in failing to urge the trial court to honor the plea agreement, and in failing to argue that Petitioner

27

should be given the opportunity to withdraw his plea because he did not breach the agreement.  As discussed *infra*, however, attorneys are not required to pursue meritless claims; and their failure to do so cannot be considered to be below the standard of objective reasonableness set forth in **Strickland v. Washington,** 466 U.S. 668 (1984).  *See* also **United States v. Gibson**, 55 F. 3d 173, 179 (5th Cir.  1994); **Koch v. Puckett**, 907 F.  2d, 524, 527 (5th Cir.  1990).

To be entitled to federal habeas corpus relief on a claim of ineffective assistance of counsel, Petitioner must demonstrate that the Mississippi Supreme Court's adjudication of his claim was an "unreasonable application" of **Strickland**, which requires proof that "counsel's performance was deficient" and "the deficient performance prejudiced the defense" so gravely as to "deprive the defendant of a fair trial; a trial whose result is unreliable." **Strickland**, 466 U.S. at 687, 688. Even if this Court found the Mississippi court's application of **Strickland** to be incorrect, this Court could not recommend granting habeas relief unless we found that court's application of **Strickland** to be objectively unreasonable or an actual misapplication of the law.  *See* **Neal v.Puckett**, 286 F.3d 230, 236 (5th Cir. 2002) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of **Strickland** is erroneous or incorrect.").

In this case, the majority of Petitioner's ineffective assistance of counsel arguments hinge on his belief that his counsel should have sought enforcement of the plea agreement that Petitioner himself forfeited by failing to appear.  The plea

agreement ceased to exist, however, when Petitioner breached the agreement by failing to appear for sentencing at the rescheduled hearing. Thus, his claim that counsel was ineffective for failing to seek enforcement of a plea agreement that no longer existed is clearly without merit, and the Mississippi Court of Appeals' rejection of same was not contrary to, or an unreasonable application of **Strickland**. The same holds true for Petitioner's claim that counsel was ineffective in failing to request that Petitioner be afforded an opportunity to withdraw or renegotiate his plea because he did not breach the plea agreement. Though **Santabello** holds a criminal defendant may be permitted to withdraw a guilty plea when the prosecutor breaches a plea agreement; where, as here, the defendant materially breaches the agreement, he is not so entitled as the government is released from its obligations under the agreement. *See* **Cook v. U.S.** 1996 WL 407244, *2 (N. D. Miss. June 14, 1996)("When the defendant has breached a plea agreement, a guilty plea entered pursuant to such an agreement need not be vacated, and the prosecution is freed from any further obligation to perform as promised.") *citing* **Hentz v. Hargett**, 71. F. 3d 1169 (5th Cir. Miss. 1996).

Likewise, Petitioner's claim that counsel should have renegotiated his plea agreement cannot sustain an ineffective assistance of counsel claim. **Strickland** requires both deficient performance and resulting prejudice be shown. Even if this Court were to find counsel was deficient, to establish prejudice, Petitioner must still show that if counsel had been able to renegotiate the plea agreement, Petitioner would have received a less severe sentence. No such showing has been

made, however.

Petitioner also claims that counsel was ineffective in failing to discuss the pre-sentencing report with Petitioner prior to sentencing. Respondents submit that to the extent this ground can be considered to allege ineffective assistance of counsel, Petitioner fails to provide any evidence to support this claim. Moreover, they contend that assuming *arguendo* that counsel did not discuss the pre-sentencing report with Petitioner beforehand, Petitioner cannot establish he was prejudiced by this failure as it is unclear that the information contained in the report affected the trial court's decision to sentence Petitioner to thirty (30) years. The Undersigned, however, has reviewed the transcript from the sentencing hearing on April 22, 2002. It is clear from that review that the trial court's references to Petitioner's criminal history, which was described in the pre-sentencing report, that the trial court did, in fact, consider the report in determining the sentence to be imposed. (See Transcript of Sentencing Hearing dated April 22, 2002, ECF No. 11-11, pp. 8-27). That said, Petitioner fails to show that but for counsel's alleged failure to discuss the report with him prior to sentencing, that the sentence imposed would have been significantly less harsh. *See* **U.S. v. Navarro-Perez**, 200 F. 3d 814 (5th Cir. 1999)(to show counsel was ineffective in failing to discuss pre-sentence report, petitioner must show that but for counsel's ineffectiveness, the sentence imposed would have been significantly less harsh). In any event, the transcript from that hearing also reflects that the trial court questioned Petitioner extensively about the information

contained in the report, and that Petitioner, when prompted, never disputed the accuracy. (ECF No. 11-11, pp. 14-27). Thus, Petitioner's claim that he was somehow unaware of the information contained in the report is without merit.

In his next assignment of error, Petitioner asserts that counsel was ineffective because of a conflict of interest regarding legal fees. Petitioner appears to assert that when he paid his attorney's legal fees on January 18, 2002, counsel was no longer motivated to ensure Petitioner was sentenced in accordance with the terms of the plea agreement. As an initial matter, the Undersigned is not convinced that Petitioner has established that an actual conflict of interest adversely affected counsel's performance. That said, as Respondents point out, this claim is belied by record evidence which shows counsel made several arguments on Petitioner's behalf at the sentencing hearing. Indeed, counsel not only requested that the court consider the fact that there was reasoning behind the state's initial offer of one and one-half years, but he also requested the court refrain from imposing the maximum sentence. Counsel also asked the court to consider that Petitioner was present in the courthouse on both the original sentencing date and the rescheduled sentencing date. Lastly, in addition to all of the foregoing, counsel requested that Petitioner be allowed to testify so that he could explain, in his own words, why he failed to appear at the rescheduled sentencing hearing on February 12, 2002. (ECF No. 11-11, pp. 7-27).

In his request for habeas relief, Petitioner also claims counsel was ineffective in failing to object to the fact that a different judge and prosecutor appeared at the

sentencing hearing on April 22, 2002, than those who were present at his guilty plea hearing. The failure to raise meritless objections, however, does not constitute ineffective assistance of counsel. **Clark v. Collins**, 19 F. 3d 959, 966 (5th Cir. 1994). As Respondents argue, neither the judge nor the prosecutor at the sentencing hearing on April 22, 2002, needed to be a present at the guilty plea hearing to understand the terms of the plea agreement. Moreover, the transcript from the sentencing hearing reflects the sentencing judge repeatedly read from the transcript of the guilty plea hearing.

In his final ineffective assistance of counsel claim, Petitioner argues counsel failed to inform him that he was required to be present at the rescheduled sentencing hearing on February 12, 2002. This clam is belied by record evidence and Petitioner's own testimony, however. Petitioner clearly testified at the April 22nd sentencing hearing that counsel had, in fact, notified him that he needed to be present at the rescheduled hearing on February 12, 2002. (ECF No. 11-11, p. 12). This claim is further undercut by Petitioner's admission that he was, in fact, present in the courthouse on February 12, 2002, but chose not to appear in the courtroom because he wanted to get it rescheduled again. (ECF No. 11-11, p. 13-14).

In sum, the Court finds that in the context of the entire case, Petitioner's representation was constitutionally adequate, in that in no single respect were counsel's representations both inadequate and prejudicial to the defense. Accordingly, the rejection of the ineffective assistance claims by the state appellate

court cannot be considered contrary to, or an unreasonable application of **Strickland**.

**V.**

**Whether Newly Discovered Evidence
Entitles Petitioner to Habeas Relief**

In Ground Twenty-Two, Petitioner advises he has newly discovered evidence to support his claims for habeas relief. To that end, he submits an affidavit from another criminal defendant, Robbie Timms, who purportedly was sentenced pursuant to a plea agreement in the Circuit Court of Lauderdale County, Mississippi on January 18, 2002 –– Petitioner's original hearing date. This affidavit, as Respondents point out, fails to specify which Lauderdale County Circuit Judge sentenced Timms, and fails to include any official documentation showing Timms was sentenced on January 18, 2002. Nevertheless, Petitioner contends the affidavit is proof that the trial judge did not have a scheduling conflict. Respondents submit, and the Court agrees, that Petitioner's claim is one of actual innocence— that is, Petitioner contends he is actually innocent of breaching the plea agreement because the sentencing hearing should have gone forward as originally scheduled on January 18, 2002, because there was no scheduling conflict. It is well-settled law, however, that claims of newly discovered evidence offered to establish actual innocence are not cognizable on federal habeas corpus review. **Herrerra v. Collins**, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L. Ed.2d 203 (1993); *see also* **Graves v. Cockrell**, 351 F. 3d 143, 151 (5th Cir. 2003); **Lucas v. Johnson**, 132 F. 3d 1069, 1074 (5th Cir. 1998). On the

contrary, "a claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." **Herrera v. Collins,** at 506 U.S. at 404. It does not state an "independent, substantive constitutional claim," necessary for warranting habeas relief. **Id**. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## Conclusion

It is therefore the recommendation of the Undersigned United States Magistrate Judge that the Petition for Writ of Habeas Corpus should be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009).

THIS the 11th day of August 2010.

_____
S/Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE